UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

SHARIF A. RANGREJ,

                    Petitioner,

        v.

MICHAEL J. ASTRUE, Commissioner
of Social Security,

                    Respondent.

Case No. 1:11-cv-00483-MHW

**MEMORANDUM DECISION AND ORDER**

**INTRODUCTION**

Currently pending before the Court for its consideration is Petitioner Sharif A. Rangrej's ("Petitioner") Petition for Review of the Respondent's denial of social security benefits, filed March 28, 2011. *Petition*, Dkt. 1. The Court has reviewed the Petition for Review and the Answer, the parties' memorandums, and the administrative record ("AR"). For the reasons that follow, the Court will affirm the decision of the Commissioner.

# I.

## Procedural and Factual History

Petitioner filed an application for Supplemental Security Income on August 10, 2009, alleging disability due to chronic back pain.   Petitioner's application was denied initially and on reconsideration, and a request for a hearing was timely filed.

Administrative Law Judge ("ALJ") Lloyd E. Hartford held a hearing on March 31, 2011, taking testimony from Petitioner and a vocational expert.  (AR 21-47.)  ALJ Hartford issued a decision finding Petitioner not disabled on May 18, 2011.  (AR 6-20.) Petitioner filed a timely appeal to the Appeals Council which denied his request for review, making the ALJ's decision the final decision of the Commissioner.  (AR 1-3.) Petitioner appealed this final decision to this Court.  Petitioner is proceeding pro se after having been represented by counsel at the hearing.  The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the hearing, Petitioner was 41 years old.  He has a twelfth grade education and attended college in India and the United States although he did not earn a degree.  He came to the United States in 1997 and became a naturalized citizen.  He has no past relevant work.

# II.

## Sequential Process

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant has

the burden of proving a disability in the first four steps of the sequential evaluation after which the burden moves to the Commissioner at the fifth step. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

At step one, it must be determined whether the claimant is engaged in substantial gainful activity. The ALJ found Petitioner had not engaged in substantial gainful activity since the application date, August 10, 2009. (AR 11.)

At step two, it must be determined whether claimant suffers from a severe impairment. The ALJ found that Petitioner's chronic back pain is "severe" within the meaning of the Regulations. (AR 11.)

Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Petitioner did not have an impairment or combination of impairments that meets or equals the criteria for the listed impairments. (AR 11.) If a claimant's impairments or combination of impairments do not meet or equal a listing, the Commissioner must assess the residual functional capacity ("RFC") and determine at step four whether the claimant has demonstrated an inability to perform past relevant work.

At step four, the ALJ found Petitioner was able to perform a limited range of light work. (AR 12.) The ALJ also found that because Petitioner had no past relevant work, transferability of job skills was not an issue. (AR 14. )

At step five, the ALJ found that the claimant retained the capacity to make an adjustment to other work that exists in significant levels in the national economy, after considering the claimant's residual functional capacity, age, education and work

experience.  Here, the ALJ found that Petitioner had the residual functional capacity to perform the requirements of representative occupations such as cannery worker, peeled potato inspector, photocopy machine operator, document preparer, dowel inspector, and final assembler optical.  (AR 15.)

## III.

## Standard of Review

The Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he not only cannot do his previous work but is unable, considering his age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Social Security Commissioner if the decision is supported by substantial evidence and is not the product of legal error.  *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotations omitted).  It is more than a scintilla but less than a preponderance.  *Id.*

It is well-settled that if there is substantial evidence to support the decision of the ALJ, the decision must be upheld "if supported by inferences reasonably drawn from the record . . ." even "where the evidence is susceptible to more than one rational interpretation." *Id.* The Court may not substitute its judgment for that of the ALJ. *Robbins v. Social Security Administration*, 466 F.3d 880, 882 (9th Cir. 2006).

## IV.

### Discussion

Petitioner does not raise specific issues on appeal. More particularly, he does not object to the ALJ's determinations that his severe impairment of chronic back pain did not meet or equal a listed impairment, that he retained the residual functional capacity to perform light work with certain limitations, that he was not credible, or that he could perform certain light, unskilled jobs. Rather, he generally disagrees with the ALJ's finding that he is not disabled and further states that the fact that his physicians could not agree on the same diagnosis should not be held against him. The Court will construe his argument to be that the ALJ's findings are not supported by substantial evidence. However, given that a determination of whether the findings are supported by substantial evidence depends in part on the ALJ's assessment of Petitioner's credibility, the Court will address that issue as well.

Petitioner also contends that Respondent failed to include certain medical records in the record. More specifically, he contends that the Medical Source Statements of Ability to Do Work-Related Activities (Physical) dated November 2, 2010 and March 14,

2011 would have supported his claimed limitations and should have been included in the

record.  These documents were among those that were the subject of Petitioner's Motion

to Augment Record (Dkt. 20) which the Court denied.  *See Order*, Dkt. 26.  The Court

found that it could not supplement the record with documents that were before neither the

ALJ nor the Appeals Council.  *Id*.  The Court further found that Petitioner had not shown

good cause for failing to present the evidence earlier, had not shown that the evidence

was material, and that there was no reasonable possibility that the documents would have

changed the outcome of the ALJ's determination.  *Id*.  The Court also noted several

factors indicating that the documents may not be authentic.  Accordingly, the Court will

not address Petitioner's claim that Respondent failed to include the subject documents in

the record given its prior determination in resolving the Motion to Augment Record.

## A.    Rejection of Petitioner's Testimony

"The ALJ is responsible for determining credibility, resolving conflicts in medical

testimony, and resolving ambiguities."  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th

Cir. 2001).  To reject a claimant's testimony regarding impairments, "the ALJ [is]

required to make 'a credibility determination with findings sufficiently specific to permit

the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.'"

*Tommasetti*, 533 F.3d at 1039 (quoting *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir.

2002)).  The ALJ must identify what testimony is not credible and what evidence

undermines the claimant's complaints.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir.

1998).  If a claimant produces objective medical evidence of an underlying impairment,

an ALJ may not reject a claimant's subjective complaints based solely on lack of medical evidence. *Tommasetti*, 533 F.3d at 1039. Unless there is affirmative evidence showing that the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting a claimant's testimony. *Id.* Stated another way, "[t]he ALJ must support his credibility finding 'with specific, clear and convincing reasons.'" *Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012) (quoting *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011)).

In evaluating credibility, the ALJ may engage in ordinary techniques of credibility evaluation, including considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct; claimant's daily activities; claimant's work record; and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which claimant complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). In addition to those factors, the ALJ may consider prior inconsistent statements regarding the symptoms, "other testimony by the claimant that appears less than candid," and "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Chaudhry*, 688 F.3d at 672 (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008)). If there is substantial evidence in the record to support the ALJ's credibility finding, the Court will not engage in second-guessing. *Id.*

Here, the ALJ found that Petitioner's statements concerning the intensity, persistence, and limiting effects of his chronic back pain symptoms were not credible to

the extent that they were inconsistent with the residual functional capacity assessment. (AR 12-13.)  Therefore, his finding must be based on specific, clear, and convincing reasons.

The ALJ specifically noted that Petitioner testified at the hearing that his back pain usually rated a 9 on a 1 to 10 pain scale, that his pain level could occasionally be decreased by limiting his activities, and that he only stayed on his feet 10% of his day. (AR 12.)  He also noted Petitioner's testimony that he is able to lift and carry more than 20 pounds occasionally although usually less than 20 pounds, that he walks three times per week as part of his physical therapy program, that he can walk 10 to 12 blocks at one time, that he is able to stand for 20 to 30 minutes at one time, and must change positions when sitting.  (AR 12.)   The ALJ also noted that Petitioner acknowledged that no doctor has told him that he is disabled or that he needs to have surgery for his back issues.  (AR 12.)

The ALJ then thoroughly reviewed the medical evidence in the record and identified the evidence suggesting Petitioner's claim of disability was less than credible. For example, he noted that a July 10, 2008 MRI examination revealed "very mild degenerative disk disease at L3/L4" and the rest of the study was "unremarkable."  (AR 13; 225.)   He noted possible diagnoses of "ankylosing spondylitis" and osteoarthritis with suggested treatment of anti-inflammatory medication, a physical therapy program, ice, heat, and massage.  (AR 13.)   The ALJ specifically noted that, during this time period, Petitioner had refused referrals to physical therapists.  (AR 13.)

MEMORANDUM DECISION AND ORDER - 8

The ALJ then focused on the March 10, 2009 letter from rheumatologist Dr. Peggy A. Rupp who indicated not only that Petitioner's x-rays and MRIs appeared "quite normal" but also that she doubted that he had an inflammatory spondylarthropathy. (AR 13.) On the issue of credibility, the ALJ also found significant Dr. Rupp's subsequent treatment notes of September 2010 and January 2011, stating that there was nothing in Petitioner's "history or exam that would suggest that he has significant spinal arthritis, as he had no synovitis and no significant limitation in motion." (AR 13; AR 322.) Dr. Rupp's treatment recommendation, similar to that of his prior treating physician, was to continue exercising and using Aleve (an anti-inflammatory) as needed. (AR 13; 322.)

The ALJ then cited other treatment notes of Dr. Rupp in support of his finding that Petitioner lacked credibility. Her March 2, 2010 note indicated that Petitioner's exam was "unremarkable" and she encouraged him to continue with core strengthening and use of Aleve or Advil. (AR 13; 304.) The Court notes that Dr. Rupp also indicated "minimal disc degeneration at L3/4," that recent testing by his primary physician, Dr. Baldridge, "revealed no evidence of abnormality and in particular no arthritic change," and that more aggressive therapy was not warranted because his arthritis was minimal. (AR 13; 304). The ALJ also referred to results of a June 30, 2010 bone scan indicating "no evidence of spondylitis." (AR 13; AR 310.)

Finally, the ALJ referred to State agency consultant Dr. Lloyd Schneiderman's conclusion that Petitioner's allegations of disability were "less than fully credible" and

that Petitioner was capable of performing work at a light exertional level with certain restrictions, and Dr. Robert Vestal's review and concurrence with that assessment. (AR 13; 282-89; 297.) He found their assessments to be consistent with the objective medical evidence of record. (AR 14.)

The ALJ discounted the assessment of Dr. John C. Welch, one of Petitioner's treating physicians, that Petitioner would need to lie down or recline in excess of the time allotted for normal work breaks, that he could sit for only four hours during an 8-hour day, could stand and/or walk for four hours during an 8-hour day, and his back pain would cause Petitioner to be absent from work three to four times per month. (AR 14; 279-81.) He did so because Dr. Welch's assessment was based primarily on the subjective information Petitioner provided and was not supported by the objective medical evidence. (AR 14; 264.) Having determined that Petitioner was not credible, the ALJ was then free to disregard Dr. Welch's opinion based as it was on Petitioner's self-report. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). *See also Tommasetti*, 533 F.3d at 1041 (affirming ALJ's rejection of medical opinion where responses were a "rehashing of claimant's own statements" which the ALJ had not found credible).

The Court finds that the ALJ made sufficiently clear and specific findings to permit the Court to find that he "did not arbitrarily discredit claimant's testimony." *See Tommasetti*, 533 F.3d at 1039. In making this finding, the Court also considered and

found persuasive the statements of Petitioner's own treating physicians evidencing doubt

that he was disabled.  For example, in December of 2008, Dr. W. Patrick Knibbe stated,

"I am certainly not inclined to recommend continued disability evaluation for this

otherwise healthy gentleman . . . .  I am a bit wary of his request for disability."  (AR

231.)  In August of 2009, Dr. Welch stated, "Qualifying for SS disbility (sic) is extremely

iffy at this time.  I don't think they would approve his application.  I informed him

another doctor will not make that much difference, and at this time I feel this would be a

waste of his money."  (AR 266.)  In December of 2010, Dr. Stephen Asher, in response to

Petitioner's request to complete forms for his social security disability benefits

application, wrote that he "[did] not have a neurologic or anatomic explanation for your

low back pain" and referred him back to Dr. Rupp.  (AR 319.)  Finally, in January of

2011, Dr. Rupp stated, "I am uncertain why he has again returned other than he is about

to appear before a judge for a disability evaluation."  (AR 322.)  Even Petitioner's

attorney at the hearing before the ALJ stated in her opening remarks that "I've explained

to Sharif the issues with the records in his case and he's aware of – there's not a lot of

strong diagnostic evidence in this case, but he wants to go forward because he does have

back pain."  (AR 25.)

## B.    Substantial Evidence Supports the ALJ's Findings

As stated above, if there is substantial evidence supporting an ALJ's decision, the

decision must be upheld even if the evidence is susceptible to different interpretations.

*Tommasetti*, 533 F.3d at 1038.  This is so even if there is evidence supporting a finding of disability or where the evidence could reasonably support either affirming or reversing the ALJ's decision.  *See Verduzco v. Apfel,* 188 F.3d 1087, 1089 (9th Cir. 1999); *Flaten v. Sec'y of Health and Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).  In evaluating the evidence, the "ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities."  *Edlund*, 253 F.3d at 1156.  Generally speaking, greater weight should be given to the opinions of treating sources than to non-treating doctors.  *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).  However, where another doctor does not contradict a treating doctor's opinion, the ALJ may reject it for "clear and convincing" reasons, and where another doctor does contradict the treating doctor's opinion, the ALJ may reject it for "specific and legitimate" reasons.  *Id.*

Here, Petitioner appears to rest his disability claim on the vocational expert's testimony that absences of three to four days of work per month due to back issues would preclude employment.  (AR 46.)  That testimony was premised on Dr. Welch's opinion that Petitioner would miss work that frequently.  However, as shown above, the ALJ did not find Dr. Welch's opinion credible because it was based on Petitioner's subjective complaints and not by his own treatment notes.  *See* AR 266 ("Qualifying for SS disbility (sic) is extremely iffy at this time.")  The Court found above that the ALJ's credibility finding as to Petitioner was supported by substantial evidence.  Therefore, the ALJ was not required to include Petitioner's discounted subjective symptoms in his residual

functional capacity finding.  *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir.

2005); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F3d. 1190, 1197 (9th Cir. 2004).  Nor,

as stated above, was he required to give any weight to Dr. Welch's opinion that was based

on those subjective symptoms.  *Tonapetyan*, 242 F.3d at 1149.

The evidence cited by the ALJ in reaching his credibility determination likewise is

indicative of the substantial amount of evidence supporting the ALJ's disability

determination.  Indeed, absent Petitioner's own subjective complaints, and Dr. Welch's

opinion based thereon, there is no arguable support for a finding of disability.  Not one of

his various treating, examining, and non-examining physicians shared Dr. Welch's view.

To the contrary, as summarized in Respondent's Brief, there is an abundance of other

objective medical evidence in the record – aside from that cited by the ALJ – lending

support to the ALJ's conclusion.  *See generally Resp. Brief* at 7-12.  The other physicians

were skeptical of his claims as indicated by the passages from their notes cited above.

Whether or not they disagreed with a specific diagnosis or cause of his pain, the

physicians, even including Dr. Welch, questioned the extent of the claimed symptoms.

Based on the above, the Court finds that the ALJ's conclusion that Petitioner is

capable of sustained employment is supported by substantial evidence and not the product

of legal error.

## V.

### Conclusion

Based on its review of the entire record, the Court finds that the Commissioner's decision is supported by substantial evidence and is not the product of legal error. Therefore, the Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act will be affirmed.

### ORDER

Based upon the foregoing, the Court being otherwise fully advised in the premises, **it is hereby ORDERED that** the Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act be **AFFIRMED** and that the petition for review be **DISMISSED**.



DATED: March 22, 2013

_____
Honorable Mikel H. Williams
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 14**